Roy **VANDERVELDE** and Renee Vandervelde, Plaintiffs,

v.

Clayton **YEUTTER**, Secretary of the United States Department of Agriculture, Defendant.

Civ. A. No. 90–1372–LFO.

United States District Court, District of Columbia.

May 2, 1991.

---

Alexander J. Pires, Jr., Conlon, Frantz, Phelan, Knapp Pires & Birkel, Washington, D.C., for plaintiffs.

Marina Utgoff Braswell, Asst. U.S. Atty., Washington, D.C., for defendant.

## MEMORANDUM

OBERDORFER, District Judge.

Plaintiffs Renee and Roy Vandervelde were dairy farmers in Oregon until they contracted with the Department of Agriculture (USDA) to sell their cattle for slaughter under the Dairy Termination Program (DTP). 7 U.S.C. § 1446(d)(3)–(7). After plaintiffs sold their cattle for slaughter, a local committee responsible for administering the DTP found that they had breached the terms of the contract and denied them payment due under the contract. That decision was upheld on administrative review. Plaintiffs bring this action seeking injunctive and declaratory relief. They also seek a finding that defendant's decision denying them payment under the contract was arbitrary and capricious and in violation of their due process rights. Defendant moves to dismiss on the ground that plaintiffs' claim for injunctive and declaratory relief is in reality a claim for monetary relief and thus subject to the Tucker Act, 28 U.S.C. §§ 1346(a)(2) & 1491(a). For the reasons stated below, defendant's motion will be denied.

### I.

The Dairy Termination Program authorizes the Secretary of Agriculture to pay milk producers to discontinue operations and sell their cattle for slaughter. 7 U.S.C. § 1446(d)(3)–(7). The DTP is administered through the Agricultural Stabilization and Conservation Service (ASCS) and state and county ASCS committees. *See* 7 C.F.R. § 1430.451. A party may seek review of ASCS committee decisions as set forth in 7 C.F.R. § 780. At each stage of review, passing from county to state ASCS committees, to the Deputy Administrator for State and County Operations of ASCS (DASCO), plaintiffs are entitled to receive an informal hearing. *See* § 780.3–5.

Section 780.8 establishes the nature of the informal hearing. Relevant parts of § 780.8 provide that:

(b) The hearing shall be conducted ... in the manner deemed most likely to obtain the facts relevant to the matter in issue. The participant shall be advised of the issues involved. The reviewing authority may confine the presentation of facts and evidence to pertinent matters and may exclude irrelevant, immaterial, or unduly repetitious evidence, information, or questions.

(c) The participant, or an authorized representative of the participant, shall be given a full opportunity to present facts and information relevant to the matter in issue and may present oral or documentary evidence. At its discretion, the reviewing authority may request or permit persons other than those appearing on behalf of the participant to present information or evidence at such hearing and, in such event, may permit the participant to question such persons.

(d) The reviewing authority shall have prepared a written record containing a clear, concise statement of the facts as asserted by the participant and material facts found by the reviewing authority ...

Plaintiffs' complaint alleges the following. On March 5, 1986, the Vanderveldes entered into a contract to sell their cattle for slaughter in exchange for approximately $1,735,000, to be paid in five annual installments. During the next year, the Vanderveldes sold their cattle for slaughter. When the first payment came due in March, 1987, defendant informed the Vanderveldes that they would not be paid because their compliance with the terms of the contract under the program was under investigation. On January 7, 1988, the Yamhill County ASCS found that the Van-

derveldes had "participated in, or benefited from, a scheme or device to defeat the purposes of the Dairy Termination Program...." The county committee determined that they would not be paid under the contract. An investigative report dated February 24, 1988 prepared by Don Schattauer, an agent of the Inspector General's office of the Department of Agriculture, found that the Vanderveldes had breached the terms of the contract. On March 17, 1988, the Yamhill County ASCS held a hearing. At that hearing, the government did not call witnesses to support the allegations in the investigative report. Nor were the Vanderveldes given an opportunity to cross examine Schattauer or any other persons. On April 19, 1988, the county committee affirmed its decision. The committee also assessed penalties of $879,000. The Vanderveldes sought reconsideration of that decision. On May 10, 1988, the county committee reaffirmed its decision. The Vanderveldes appealed that decision to the Oregon State ASCS. That committee heard the appeal on June 9, 1988. Again, the government did not present witnesses, no factual evidence of any kind was offered, and the Vanderveldes had no opportunity to cross examine any person, including Schattauer. The state decision upheld the county decision without making any findings of fact. The Vanderveldes then appealed the state decision to DASCO in Washington, D.C. A hearing before DASCO was held on August 26, 1988. Once again, the government offered no witnesses and the Vanderveldes did not have any opportunity to cross examine Schattauer or anyone else. DASCO again affirmed by reference the findings of the investigative report and made no findings of fact. However, DASCO waived the $876,000 penalty. Throughout the administrative process, the Vanderveldes sought but were denied the opportunity to depose witnesses whose statements formed the basis for the conclusions in the investigative report. On August 15, 1989, the Vanderveldes brought suit in the United States Claims Court. The Vanderveldes requested that the Court permit discovery. Specifically, plaintiffs requested the opportunity to depose the witnesses whose statements led to the conclusions in the investigative report. On February 28, 1990, the Claims Court denied the Vanderveldes' request for discovery. The Vanderveldes dismissed their complaint in Claims Court, believing that they could not prosecute that claim effectively without discovery.

Thereafter, the Vanderveldes conducted their own investigation of the witnesses whose statements were used in the investigative report. Steven Russell, an attorney in the Vanderveldes' law firm, traveled to Oregon and interviewed William Woods, Kenneth Hale, and Charles Kundert, Jr. An affidavit from Russell attached to the complaint describes in detail what each of those witnesses told him. In summary, all of the three witnesses told Russell that the statements they signed were drafted by Agent Schattauer, not them, that Schattauer threatened to investigate or prosecute them if they failed to cooperate, that the statements as drafted were inaccurate or misleading versions of what they told Schattauer, that Schattauer displayed his firearm at times in a threatening manner, and that they did not agree with the report's conclusions. *See* Russell affidavit.

In this claim, the Vanderveldes allege the following counts: (1) that defendant suspended their payments under the contract in violation of law; (2) that defendant denied them the right to participate in the DTP in violation of law; (3) that the administrative decisions were arbitrary and capricious; (4) that defendant violated their due process rights; (5) that the administrative agencies failed to make factual findings in violation of law and their contract; and (6) that the government took their property without compensation in violation of the Fifth Amendment. They seek the following relief: (1) that defendant be preliminarily enjoined from suspending payment; (2) a declaration that the Vanderveldes are entitled to participate in the DTP; (3) reversal of the administrative decisions as arbitrary and capricious; and (4) attorneys fees and costs.

## II.

The Tucker Act provides that:

The United States Claims Court shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages not sounding in tort...."

28 U.S.C. § 1491(a)(1). United States District Courts have concurrent jurisdiction with the Claims Court over any contract claim against the United States not exceeding $10,000. 28 U.S.C. § 1346(a)(2).

Defendant moves to dismiss on the grounds that, though this action is framed in terms of declaratory and injunctive relief, it is in reality an action for money damages. As such, defendant argues, it is subject to the exclusive jurisdiction of the Claims Court. Defendant explains that the Vanderveldes seek to have defendant enjoined from suspending payment. Therefore, defendant argues, since the end result of such an injunction would be to compel defendant to make such payments, this is a claim for monetary damages. Defendant further explains that the Vanderveldes' contract with the government under the DTP places it within the Claims Court's contractual jurisdiction. In support, defendant points *inter alia* to *Baker v. Lyng*, Civil Action No. 87–1643 (D.D.C. August 4, 1987). The plaintiffs in *Baker* sought injunctive and declaratory relief related to a USDA contract under price support programs. This Court dismissed that claim because the Claims Court had exclusive jurisdiction. However, the Court in *Baker* did not consider any due process or administrative claim. Defendant's motion to dismiss does not address the Vanderveldes' due process claim nor their administrative claim.

In a more analogous case that presented a due process claim, the D.C. Circuit rejected a Tucker Act argument by the USDA. *Esch v. Yeutter*, 876 F.2d 976 (D.C.Cir. 1989). *Esch* involved a price support program and a conservation reserve program. The plaintiffs had sued in district court for an injunction declaring the administrative decision to be arbitrary and capricious. They sought redetermination of the denial of benefits in a fair and impartial hearing. *Id.* at 984. The court based its finding that the district court had jurisdiction on its determination that the plaintiffs sought a new hearing, not money damages. Its decision did not turn on a finding that the price support and conservation reserve contracts at issue were not contracts for purposes of the Claims Court's contractual jurisdiction. *Id.* at 978. Nevertheless, the court stated that "we see no reason to assume that what is involved here is a contract within the meaning of the Tucker Act.... [Appellees] claims arise under a federal grant program and turn on the interpretation of statutes and regulations rather than on the interpretation of an agreement negotiated by the parties." *Id.* at 978 n. 13, citing *Maryland Dep't of Human Resources v. HHS*, 763 F.2d 1441 (D.C.Cir.1985). Moreover, the *Esch* court relied substantially on *Bowen v. Massachusetts*, 487 U.S. 879, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988). *Bowen* involved a challenge by Massachusetts to a denial of Medicaid funds. The Supreme Court held that, though that claim sought monetary relief from the government, it did not constitute a claim for money damages subject to the Tucker Act. The Court further noted that the Medicaid Act did not authorize compensation for past injuries or labors, but instead subsidized future state expenditures. *Id.*, 108 S.Ct. at 2738 n. 42. Thus, the Tucker Act may not apply to federal grant programs that do not involve a request for damages for past harm, even though they may involve contracts. In any event, the court in *Esch* rejected the argument defendant presents here, that this claim constitutes an implicit claim for money damages.

The price support and conservation reserve programs at issue in *Esch* are similar to the Dairy Termination Program at issue here in that each provides: (1) that farmers contract with the Department of Agriculture through the Commodity Credit Corpo-

ration (CCC); (2) that the Agricultural Stabilization and Conservation Service (ASCS) and state and county ASCS committees administer the program; and (3) that farmers may appeal a denial of benefits through the appeal procedures set forth in 7 C.F.R. § 708. *See* 7 C.F.R. § 704 (Conservation Reserve Program); 7 C.F.R. § 1430.450 (Dairy Termination Program); 7 C.F.R. § 713.2 (1988) redesignated as § 1413 (1988) (price support program). Thus, the administration and regulatory posture of these programs is essentially the same.

Nonetheless, the government seeks to distinguish *Esch*, and, indeed, cites *Esch* in its favor. It argues that the plaintiffs there, unlike plaintiffs here, sought a rehearing instead of money damages, that this case, unlike that one, involves a contract, and that the Claims Court could not grant the injunctive relief sought in *Esch*. However, as noted in the district court opinion in *Esch*, the *Esch* plaintiffs originally sought the same relief sought here: a finding "that defendant's actions were arbitrary, capricious, and an abuse of discretion and violated their due process rights," "a declaration of eligibility for the subsidy programs in question," and preliminary relief enjoining defendants from suspending payments. *Esch v. Lyng*, 665 F.Supp. 6, 10 & 15 (D.D.C.1987). In addition, the *Esch* plaintiffs had entered into a contract. *Id.* at 11. The district court entered a preliminary injunction enjoining defendants from suspending payments to plaintiffs. Following the issuance of the preliminary injunction, the plaintiffs emphasized that they sought redress for arbitrary and capricious administrative review and due process violations, not payment of past benefits. However, the plaintiffs also sought a declaration of permanent eligibility for the programs, "which declaration would have the prospective effect of entitling them to federal benefits and could serve as a predicate for money damages against the government in the Claims Court." *Id.* at 16. The district court found a violation of due process and remanded the case to the administrative agency for a rehearing for the years following 1987. *Id.* at 23. With respect to 1987, the district court held that the administrative decision was substantially insupportable, and reversed. *Id.* The court of appeals upheld the district court's finding of procedural violations. However, it determined that the court should have remanded, not reversed, the administrative decision for 1987. *Esch*, 876 F.2d at 993.

Therefore, *Esch* establishes that plaintiffs may proceed in this Court at least on their due process and administrative claims, even though it does not authorize the relief plaintiffs seek. Accordingly, an accompanying Order denies defendants' motion to dismiss and suggests that plaintiffs file a motion for summary judgment.

### ORDER

For the reasons stated in the accompanying Memorandum, it is this 2d day of May, 1991, hereby

ORDERED: that defendant's motion to dismiss should be, and is hereby, DENIED; and it is further

ORDERED: that plaintiffs may file a motion for summary judgment on or before May 30, 1991.