PETERSON FARMS I, et al., Plaintiffs,

v.

Edward MADIGAN, Secretary, United States Department of Agriculture, Defendant.

Civ. A. No. 91–2340 (JHG).

United States District Court, District of Columbia.

Dec. 17, 1991.

Alexander J. Pires, Jr., Conlon, Frantz, Phelan, Knapp, Pires & Birkel, Washington, D.C., for plaintiffs.

Claire M. Whitaker, Asst. U.S. Atty., Michael Knipe, U.S. Dept. of Agriculture, Washington, D.C., for defendant.

## MEMORANDUM OPINION

JOYCE HENS GREEN, District Judge.

On September 16, 1991, plaintiffs, four farming partnerships, filed the instant complaint and a motion for a preliminary injunction, alleging, *inter alia,* that the United States Department of Agriculture, Agricultural Stabilization and Conservation Service ("ASCS"), acting on behalf of the Commodity Credit Corporation ("CCC"), wrongfully suspended plaintiffs from partic-

ipation in a federal farm program and withheld payments due plaintiffs for the 1987 crop year, and they seek injunctive and declaratory relief. On October 10, 1991, in response to plaintiffs' motion for a preliminary injunction, defendant filed a motion to dismiss.

On November 26, 1991, there was a hearing on plaintiffs' motion for a preliminary injunction and on defendant's motion to dismiss. At that hearing, counsel for plaintiffs candidly admitted that plaintiffs could not meet their burden of demonstrating irreparable injury and thus, withdrew their motion for a preliminary injunction. Having considered the arguments raised at oral argument and in the pleadings, and for the following reasons, defendant's motion to dismiss shall be denied.

## I.  BACKGROUND

According to the Complaint, plaintiffs' farming operations involve participation in a federal farm program called the Price Support and Production Adjustment Program for Wheat, Corn, and Cotton and Other Commodities ("Production Adjustment Program" or the "farm program(s)"). The farm program is funded by the CCC, and the day-to-day operations of administering it are performed by employees of the ASCS.

The Secretary of Agriculture uses local and state committees, which were established as part of ASCS, to administer the programs. The local county committee consists of producers from within the county elected by other producers, and the statewide committee consists of producers from each state selected by the Secretary. The State Committee hears appeals from final determinations of the counties in that state. A national ASCS office in Washington, D.C., headed by the Deputy Administrator, State and County Operations ("DASCO"), directs the implementation of the programs, supervises the county and state committees, and renders the final de-

terminations of appeals from the state committees.

Farmers who receive funding through the CCC are subject to limitations in the amount of payments they may receive. In essence, each "person" is limited to $50,000 in payments, and although the term "person" was not defined by Congress, the Secretary's regulations define "person" to include individuals, partnerships, and corporations that are economically independent units.

Each of the plaintiffs submitted a 1987 farm operating plan on March 23, 1987 to the Fresno County Committee. On March 30, 1987, the Fresno County ASCS Committee notified plaintiffs that they were considered 12 persons eligible to receive program benefits for the 1987 crop year. Plaintiffs went forward and farmed in reliance on that determination.

The Complaint further alleges that in September, 1988, plaintiffs were selected for payment limitation review by a special task force. As a result of this review, plaintiffs were notified on April 19, 1989, by letter from the California State ASCS Office, that the four general partnerships were determined ineligible for payment for 1987.[1] Specifically, plaintiffs were advised that they were limited to one "person" for crop year 1987.

Plaintiffs appealed the decision to the State Committee, which case was heard on September 6, 1989. On September 12, 1989, however, the State Committee ruled that " 'the manner in which the new partnerships assumed the liabilities of the old partnership and the subsequent payment of bills was a violation of the financing rules in Handbook 5–CM as well as 7 C.F.R. 795.3.' " Complaint, ¶ 15.

Plaintiffs then appealed the Committee's determination to DASCO, and on November 8, 1989, a hearing was held. At the DASCO hearing, plaintiffs requested that the original person determination of the county committee be reinstated. Plaintiffs further objected to ASCS's imposition of

___

**1.** Plaintiffs have been approved for participation in the 1985, 1986, 1988, 1989, and 1990 programs, without objection.

capitalization and financing rules that had been undertaken without the APA's notice and comment procedures and without plaintiffs' awareness. Nonetheless, on July 9, 1990, DASCO released its decision, finding against plaintiffs based on the application of the capital contribution and financing rules, the substantive change rule contained at 7 C.F.R. § 795.14, the financing rule contained at 7 C.F.R. § 795.3, and the custom farming rule contained at 7 C.F.R. § 795.16.

## II. DISCUSSION

■ In viewing a motion to dismiss, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). The factual allegations of the complaint must be presumed true and liberally construed in favor of plaintiff. *Shear v. National Rifle Association*, 606 F.2d 1251, 1253 (D.C.Cir.1979); 5A C. Wright & A. Miller, *Federal Practice and Procedure*, § 1357, p. 304 (1990). The plaintiff is entitled to all favorable inferences which may be drawn from those allegations. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

■ The Tucker Act vests in the United States Claims Court jurisdiction over

> any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States.

28 U.S.C. § 1491(a)(1). While it is indisputable that this Court would have jurisdiction over genuine due process or Administrative Procedure Act ("APA") claims for injunctive relief or "monetary relief," where the crux of the Complaint rests on an alleged contractual violation for "money damages," plaintiff is limited by the Tucker Act and its mandate to proceed in Claims Court.

Defendant contends that plaintiffs' claims are really ones for money damages in excess of $10,000, and, as such, are cognizable only in the Claims Court. The Court cannot agree.

The first inquiry in determining whether this District Court has jurisdiction is whether plaintiffs, in actuality, seek "money damages" as that term was defined in *Bowen v. Massachusetts*, 487 U.S. 879, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988) and elucidated in *Esch v. Yeutter*, 876 F.2d 976 (D.C.Cir.1989), rather than injunctive relief or "monetary relief." It is clear, as counsel openly conceded at oral argument, that plaintiffs are not seeking another administrative hearing, as was sought and granted in *Esch*. It is equally apparent that, unlike *Esch* where those plaintiffs sought to obtain future benefits, plaintiffs here seek a determination regarding whether the producers received proper payments for the 1987 crop year. Moreover, while the litigants in *Esch* expressly disavowed an interest in monetary relief and asked only for a fair hearing, plaintiffs in this action have never disavowed an interest in a sum certain, and a reversal of the administrative decision on the merits would result inexorably in payment of money from defendant to plaintiffs.

■ Nonetheless, "[t]he fact that a judicial remedy may require one party to pay money to another is not a sufficient reason to characterize the relief as 'money damages.'" *Bowen*, 108 S.Ct. at 2732. As the Supreme Court explained in *Bowen*, "Our cases have long recognized the distinction between an action at law for damages—which are intended to provide a victim with monetary compensation for an injury to his person, property, or reputation—and an equitable action for specific relief—which may include an order providing for the reinstatement of an employee with back pay, or for 'the recovery of specific property *or monies*, ejectment from land, or injunction either directing or restraining the defendant officer's actions.'" *Id.* (citing *Larson v. Domestic and Foreign Commerce Corp.*, 337 U.S. 682, 688, 69 S.Ct. 1457, 1460, 93 L.Ed. 1628 (1949)) (emphasis

in original). In other words, "money damages" are given to a plaintiff to substitute for a suffered loss, and a specific remedy or "monetary or money relief" is an attempt to provide the plaintiff the very thing to which he or she is entitled. *Bowen*, 108 S.Ct. at 2732 (citing *Maryland Department of Human Resources v. Department of HHS*, 763 F.2d 1441 (D.C.Cir. 1985)).

■ Here, plaintiffs are not seeking money in compensation for losses that they may have suffered, or are suffering, by virtue of the withholding of the 1987 payments. Rather, they are seeking a declaration of entitlement to reimbursement of the withheld funds. And while such relief may ultimately be characterized as "monetary relief," it cannot be characterized as "money damages."

The Court must next consider, therefore, whether the Claims Court could provide plaintiffs with the " 'special and adequate review procedure' that will oust a district court of its normal jurisdiction under the APA." *Bowen*, 108 S.Ct. at 2737 (citations omitted). While the instant case does not appear to involve the same kind of "complex questions of federal-state interaction" [2] as were presented in *Bowen* and, unlike *Esch*, seeks, in essence, monetary relief, the Court cannot conclude that the Claims Court is better suited to consider plaintiffs' APA claims. *See Esch*, 876 F.2d at 984–85. This District Court is equipped and authorized to provide, if necessary and appropriate, intermediate injunctive relief and is familiar with the type of APA claims raised by plaintiffs. Under these circumstances, there is no reason to "displace the District Court's APA jurisdiction over [plaintiffs'] suit." *Esch*, 876 F.2d at 985.

### III. CONCLUSION

Accordingly, for the reasons expressed above, it is hereby

ORDERED that defendant's motion to dismiss is denied; it is

FURTHER ORDERED that should defendant agree to the legitimacy of plaintiffs' interrogatory requests, and because plaintiffs indicated that limited discovery can be accomplished swiftly and adequately through interrogatories, plaintiffs shall provide defendant with interrogatories no later than December 30, 1991, and defendant's responses shall be provided to plaintiffs no later than January 21, 1992; [3] and it is

FURTHER ORDERED that *all* motions, including motions for summary judgment, shall be filed no later than January 31, 1992; oppositions thereto shall be filed no later than February 20, 1992; and replies, if any, shall be filed no later than February 28, 1992.

IT IS SO ORDERED.

---

**2.** *Id.* at 2739.

**3.** Discovery disputes, if any, shall be referred to a Magistrate Judge.