**Bernard L. VCULEK, Plaintiff,**

v.

**Clayton YEUTTER, Secretary of Agriculture, Defendant.**

**Civ. No. A3–89–139.**

United States District Court,
D. North Dakota,
Southeastern Division.

Nov. 2, 1990.

Edward Klinger, Gunhus, Grinnell, Klinger, Swenson & Guy, Moorhead, Minn., for plaintiff.

Norman G. Anderson, Asst. U.S. Atty., Fargo, N.D., for defendant.

## MEMORANDUM AND ORDER

WEBB, District Judge.

This action was filed on September 22, 1989, claiming that the defendant had erroneously determined the plaintiff's eligibility for farm disaster payments. The defendant has moved for summary judgment and the plaintiff opposes the motion. The court now addresses the motion for summary judgment.

## FACTS

The plaintiff, Bernard Vculek, owns and operates a 1500 acre farm in Sargent County, North Dakota. He, his wife and their children also own the Crete Elevator in Crete, North Dakota. After the drought the summer of 1988, Vculek applied to the Agricultural Stabilization and Conservation Service (ASCS) in Sargent County for crop disaster payments. Such payments were authorized by Congress in the Disaster Assistance Act of 1988. On December 14, 1988, Vculek received a disaster payment in the amount of $63,554.00 for the 1988 lost crops.

Later that winter, ASCS requested information from Vculek regarding the gross income of the Crete Elevator. A person whose annual gross income exceeds $2,000,000 is ineligible for crop disaster payments. In 1987, the determinative year for calculating eligibility for 1988 payments, Vculek's gross income from his farm operation was approximately $1,000,-000, but the gross income from the elevator was about $15,000,000.[1]

ASCS determined that the income from the elevator made Vculek ineligible for crop disaster payments and asked Vculek to return the disaster payment. Vculek appealed the decision made on the county level to the state level. The state committee also determined that Vculek was ineligible. Vculek then brought this suit arguing

that the income from the elevator was used erroneously in determining his eligibility.

## ANALYSIS

The plaintiff is asking the court to review certain aspects of the Secretary of Agriculture's interpretation of the Disaster Assistance Act of 1988. Vculek has not exhausted all his administrative remedies, because review of the state decision is still available at the national level. *See* 7 C.F.R. § 780.5. Generally, a party is required to exhaust all administrative remedies before a court can review an administrative decision. *E.g., State of Missouri v. Bowen,* 813 F.2d 864, 871 (8th Cir.1987). However, the exhaustion doctrine is not to be applied inflexibly and is subject to numerous exceptions. One exception to the exhaustion requirement applies when there is nothing to be gained other than an agency decision adverse to the plaintiff. *Sioux Valley Hosp. v. Bowen,* 792 F.2d 715, 724 (8th Cir.1986). The defendant concedes that no purpose would be served by requiring Vculek to appeal at the national level because no facts are in dispute and a third administrative determination would be redundant.

In addition, while the regulatory framework allows for an appeal at the national level, it is not required. 7 C.F.R. § 780.5. *See also State of Missouri v. Bowen,* 813 F.2d 864, 871 (8th Cir.1987) (requiring exhaustion of remedies is discretionary when regulations do not require it). Therefore, the court will consider the merits of this case.

Vculek takes issue with two aspects of the defendant's application of the Disaster Assistance Act of 1988 to his (Vculek's) situation. One is the Secretary's use of gross income from the elevator, rather than some other measure of income, to determine whether or not a majority of Vculek's 1987 income came from farming or non-farming sources. The second aspect is the Secretary's adoption of the definition of "person" under 7 U.S.C. § 1308, for use

1. Although the gross revenue of the elevator was over $15,000,000, Vculek suffered a net loss of almost $500,000 from the operation of the elevator.

in the Disaster Assistance Act to determine eligibility for disaster payments.

The first issue involves the defendant's interpretation of § 231, 7 U.S.C. § 1421 note.[2] The Secretary has interpreted "income" as it is used in the statute to be gross income. *See* 7 C.F.R. § 1477.3(g). Vculek argues that this interpretation is contrary to the statutory language and frustrates the overall purpose of the Act.

█ When a court reviews an agency's construction of a statute, it must first determine "whether Congress has directly spoken to the precise question at issue". *Murray v. Lyng*, 854 F.2d 303, 305 (8th Cir.1988) (quoting *Chevron U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 842, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984)). If the intent of Congress is clear the court must give effect to that intent, and that is the end of the matter. *Chevron*, 467 U.S. at 842–43, 104 S.Ct. at 2781; *Murray v. Lyng*, 854 F.2d at 305. Only when the statute is silent or ambiguous with respect to the specific issue, need the court consider whether the agency's construction is reasonable. *Chevron*, 467 U.S. at 842, 104 S.Ct. at 2781.

█ On the issue of the Secretary's interpretation of § 231 of the Disaster Assistance Act, this court's analysis can end at the first step. The statutory language, legislative history, and overall scheme of the Act indicate that when Congress said "income" in § 231, it meant gross income.

There is no question that final eligibility is based on gross revenues and not some other form of measurement, such as net income. The question raised by Vculek is whether gross income should be used initially in the majority-of-income test set out in § 231, to determine whether revenue from both farming and non-farming sources is to be considered for eligibility. Vculek argues that since Congress used both the phrase "annual income" and the phrase "gross revenue" in the majority-of-income test, "annual income" must mean something other than gross income. The court is unconvinced by that argument.

Congress adopted an overall eligibility scheme based on gross revenue. If Congress had meant for a part of that scheme to be based on something other than gross revenue, it appears to the court that it would have been explicit in that regard. The absence of any indication from the language of the statute or the legislative history, that something other than gross income should be considered in the majority-of-income test, convinces the court that Congress meant gross income.

Even if Congressional intent were unclear in this matter, the court can find nothing unreasonable, arbitrary or capricious about the Secretary's interpretation. Vculek argues that the use of gross income in the majority-of-income test is contrary to Congress' intent to preserve the farmer's livelihood and operation. However, when Congress adopted an eligibility scheme based on gross revenue, it realized that someone in Vculek's position could be excluded from assistance. The debate in the House on the adoption of the "annual gross revenue as determined by the Secretary" provision, reflects this:

> Mr. **Brown** of Colorado. Mr. Chairman, I thank the gentleman for yielding to me. I want him to know that I will join in support of his amendment, but let me ask this:
>
> Do I understand the amendment only deals with gross sales and not with net increase?

**2.** Section 231 provides:

(a) **General Rule.**—A person that has qualifying gross revenues in excess of $2,000,000 annually, as determined by the Secretary of Agriculture, shall not be eligible to receive any disaster payment or other benefits under this title [this note].

(b) **Qualifying gross revenues.**—For purposes of this section, the term 'qualifying gross revenues' means—

(1) if a majority of the person's annual income is received from farming, ranching, and forestry operations, the gross revenue from the person's farming, ranching, and forestry operations; and

(2) if less than a majority of the person's annual income is received from farming, ranching, and forestry operations, the person's gross revenue from all sources.

Section 231, 7 U.S.C. § 1421 note.

Mr. **Schumer.** The gentleman is correct.

Mr. **Brown** of Colorado. So, it is possible that someone can have $2 million in sales or more and have a net loss and be excluded from this assistance.

Mr. **Schumer.** The gentleman is correct.

134 Cong.Rec. 19,529 (1988).

Discussion on the floor of the House also reflects Congress' concern over the mechanical problems an eligibility scheme based on net income would present. *See id.* at 19,529–31. Those same problems would arise if the Secretary had to use something other than gross income in the initial determination of what revenue to consider for eligibility.

Finally, Congress did consider a $1 million cap on eligibility, but kept the higher limit "to err on the side of caution" in protecting the farmer. In addition, the majority-of-income test already operates to increase the ceiling for farmers who have total gross revenues over the $2 million mark, as long as their farm-related revenue is less than $2 million and more than half of their total revenue. Unfortunately, Vculek does not fall into that category.

In short, the Secretary's interpretation of "income" in § 231(b), 7 U.S.C. § 1421 note, as meaning gross income, is not in disregard of the purpose of the Disaster Assistance Act. The statutory language, legislative history, and overall scheme of the Act indicate that Congress did not contemplate providing assistance to someone in Vculek's position.

The second issue concerns the Secretary's adoption of the definition of "person" under 7 U.S.C. § 1308, for use in the eligibility scheme of the Disaster Assistance Act.[3] Adoption of that regulatory framework requires the Secretary to consider Vculek's corporate ownership of the elevator when determining eligibility for disaster payments. Vculek argues that the

Secretary's adoption is erroneous, arbitrary, capricious, and contrary to law.

The Secretary was given the authority by Congress to issue regulations to carry out the provisions of the Disaster Assistance Act, and the court can find nothing erroneous, arbitrary, or capricious about the Secretary's decision to adopt an already established regulatory scheme defining the term "person", for use in the Disaster Assistance Act. In fact, despite Vculek's arguments to the contrary, references to that regulatory scheme at 7 U.S.C. § 1421 note, §§ 109, 133, 211, & 223, suggest that the Secretary did precisely what Congress intended him to do. Therefore,

IT IS ORDERED that defendant's motion for summary judgment be and hereby is granted.

IT IS FURTHER ORDERED that the bond posted in this action by the plaintiff shall remain in effect until such time as the judgment, as directed by this court, is satisfied.

LET JUDGMENT BE ENTERED ACCORDINGLY.

---

**3.** In the Food Security Act of 1985, Congress adopted limitations on deficiency payments for certain crops. Those limitation provisions were codified at 7 U.S.C. § 1308 as part of the Agricultural Adjustment Act. Congress directed the Secretary of Agriculture to issue regulations defining the term "person" for payment limitation purposes. 7 U.S.C. § 1308(5)(A) & (B). The Secretary did so. *See* 7 C.F.R. § 795.1 et seq. The Secretary has adopted that regulatory scheme for use in the Disaster Assistance Act.