Christian **HANSON** and Evan Hanson, General Partners of and d/b/a Hanson Farms, Plaintiffs,

v.

Edward **MADIGAN**, Secretary, United States Department of Agriculture, Defendant.

No. 91–C–581–C.

United States District Court, W.D. Wisconsin.

March 23, 1992.

Syndney Berde, Doherty, Rumble & Butler, St. Paul, Minn., for Christian Hanson, Evan Hanson.

Terry Jackson, Office of General Counsel, U.S. Dept. of Agriculture, Washington, D.C., for U.S. Dept. of Agriculture.

Christa A. Reisterer, Asst. U.S. Atty., Madison, Wis., for Edward Madigan.

## OPINION AND ORDER

CRABB, Chief Judge.

This is an action for review of an agency decision or for declaratory relief brought pursuant to 5 U.S.C. § 701, et seq. Plaintiffs are challenging defendant's decision to deny them payments under the Disaster Assistance Act of 1988. Defendant found plaintiffs to be persons whose qualifying gross revenues exceeded $2 million annually, and thus ineligible for disaster payments. Plaintiffs contend that defendant's decision is arbitrary, capricious and contrary to law. The case is before the court on the parties' cross-motions for summary judgment.[1]

I conclude that plaintiffs are correct. Defendant based his denial of their application for payments on an interpretation of the law that is not supported by his own regulations or by the language of the Act

---

1. Oddly, given the complexity of the statutory arguments made in this case, the government declined to file a brief in opposition to plaintiffs' cross motion for summary judgment. It declined as well to send a representative to the oral argument on the motion, leaving the very technical interpretation of the Act's provisions to an assistant United States Attorney in this district who had had no involvement in drafting the motion or the one brief in support of the motion.

itself. Accordingly, I will reverse the Secretary's denial of payments.

For the purpose of deciding these motions, I find from the findings of fact proposed by the parties that there is no genuine dispute with respect to the following material facts.

## FACTS

Plaintiffs Christian Hanson and Evan Hanson are the general partners of Hanson Farms, a partnership located in St. Croix County, Wisconsin. Defendant Edward Madigan is Secretary of Agriculture and as such is the official of the Department of Agriculture ultimately responsible for administering the statutes and regulations involved in this action.

Implementation of the disaster assistance program, 7 U.S.C. § 1421, note §§ 201–241, was delegated to the Agricultural Stabilization and Conservation Service, an agency within the Department of Agriculture. The ASCS has a three-tiered organizational and adjudicative structure with offices at the county, state and national levels. The St. Croix County Committee is responsible for the implementation of the disaster assistance program for residents of St. Croix County. It is assisted by the county executive director.

In 1988, plaintiffs contracted with the Commodity Credit Corporation to perform various agricultural practices as consideration for Commodity Credit Corporation payments. After the drought plaintiffs made timely application for disaster benefits.

On January 12, 1989, a representative of the St. Croix County Committee approved the Hanson Farms application for 1988 disaster benefits in an amount of $51,218. On January 13, 1989, a check was issued in this amount. The application was processed on Form CCC–441, *Application for 1988 Disaster Benefits,* which required Hanson Farms to "[c]ertify that the producer's qualifying gross income, as defined in 7 C.F.R. Part 1477, does not exceed $2 million."

On March 17, 1989, the St. Croix County Committee determined that "Hanson Farms is a general partnership having two members ..., is actively engaged in a farming operation and is two 'persons' for payment limitation purposes, separate and distinct from any other individual or entity."

On December 13, 1989, the St. Croix County Committee's executive director, Richard A. Gade, wrote Chris Hanson that the St. Croix County Committee "feels that your gross income may exceed the 2 million dollar provision" and requested Chris Hanson to provide the committee with "a copy of your 1987 IRS–1040 and supplemental schedules to determine your qualifying gross income." Gade informed Chris Hanson that "the requested tax documents must be received ... on or before December 29, 1989," and that failure to provide them "will result in the loss of program benefits." On February 16, 1990, the executive director sent an identical letter to Evan Hanson. Chris Hanson and Evan Hanson provided the St. Croix County Committee with copies of their 1987 IRS–1040 forms and all supplemental schedules. (Eligibility and payment limitation determinations under the 1988 Act were to be based on 1987 income.)

On February 15, 1990, the director notified the Hansons that "based on statements made by Chris Hanson on January 4, 1990 concerning the gross annual income of their outside corporations, it is evident that they ... exceed the two million dollar limit" and are therefore ineligible to retain their respective shares of the $51,218 disaster benefits. The committee's conclusion that the Hansons were ineligible to receive disaster assistance benefits was based upon its determination that

each of you has separate controlling interests in a non-farm business that you indicated exceed two million dollars in gross income for 1987.

Since each of you has controlling interest in your individual non-farm business, the income from this business has to be considered when determining qualifying gross income....

In 1987, the Hanson Farms partnership suffered a net loss. In 1987, Chris Hanson

showed on his federal income tax return gross revenues from all sources of $90,-398.82; Evan Hanson showed gross revenues from all sources of $47,245.94.

In 1987, Chris Hanson was sole shareholder of Douglas–Hanson Company, a corporate entity separate and apart from Hanson Farms. Douglas–Hanson Company has never been involved directly or indirectly in farming, ranching or forestry operations. In 1987, Evan Hanson was sole shareholder of Rochester Institutional Foods, a corporate entity separate and apart from Hanson Farms. Rochester Institutional Foods has never been involved directly or indirectly in farming, ranching or forestry operations. (The record shows nothing about the gross sales or gross revenues of either corporation in 1987.)

On April 12, 1990, plaintiffs appealed the St. Croix County Committee's determination that they were ineligible for 1988 disaster assistance and challenged the committee's conclusion that the applicable regulations authorized the inclusion of the gross sales revenues of their separate non-farming corporations in their respective individual "gross incomes." On June 19, 1990, the Wisconsin State ASCS Committee affirmed the St. Croix County Committee's determination on the ground that under the Disaster Assistance Act, "[i]f less than a majority of the persons income is from [farming], qualifying gross revenue shall be the persons income from all sources...."

The Hansons appealed to the Deputy Administrator, State and County Operations, raising the same issue that they had raised in their appeal to the state ASCS Committee. On March 20, 1991, the deputy administrator affirmed the determination of the state ASCS committee on the ground that

Each [of the Hansons] individually received less than 50 percent of their income from farming. As a result income from all sources was used in determining qualifying gross income individually. The qualifying gross income of both exceeded the $2 million limit prescribed and they were individually found ineligible for benefits....

## OPINION

### *Availability of Judicial Review*

■ The deputy administrator is the ultimate level of administrative appeal. 7 C.F.R. §§ 780.5 and 780.6. His decision that plaintiffs were ineligible for benefits under the Disaster Assistance Act is the equivalent of a decision by the Secretary of Agriculture. Reviewability of the decision is the initial question to be determined. Defendant contends that the Deputy Administrator's factual determinations concerning plaintiffs' gross income and their ineligibility for disaster benefits are not subject to review by this court because 7 U.S.C. §§ 1385 and 1429 make such determinations "final and conclusive."

Section 1385 bars federal courts from reviewing the facts constituting the basis for payments under Chapter 3B of Title 16 [soil conservation], under the wheat, feed grain, upland cotton and rice programs authorized by Chapter 35A, and any loan or price support operation. The statute makes no reference to disaster assistance payments, and the Secretary offers no reason to read the statute as covering such payments. Section 1429 provides that determinations made by the Secretary under the Agricultural Act of 1949 are final and conclusive. However, the Secretary does not contend that the Disaster Assistance Act is part of the 1949 Act.

Even if § 1385 or § 1429 could be read as barring the courts from reviewing findings of fact made in connection with the Disaster Assistance Act of 1988, neither statute bars the courts from reviewing questions of law, or deciding whether the ASCS violated its own regulations in reaching its determinations. *Esch v. Yeutter,* 876 F.2d 976, 991 (D.C.Cir.1989) (citing *United States v. Batson,* 782 F.2d 1307, 1311 (5th Cir.), *cert. denied,* 477 U.S. 906, 106 S.Ct. 3277, 91 L.Ed.2d 567 (1986)); *Madsen v. Dep't of Agriculture,* 866 F.2d 1035, 1036 (8th Cir.1989) (section 1385 not a complete bar to judicial review of agency action related to farm program payments; under Administrative Procedure Act court

is free to review legal questions or assertions of arbitrary and capricious agency actions). The statute itself confers finality on the department's factual findings "only when those facts are 'officially determined in accordance with the applicable regulations prescribed by the Secretary.'" *Esch v. Yeutter*, 876 F.2d at 991 (quoting 7 U.S.C. § 1385). Plaintiffs' argument is a legal one: whether the Deputy Administrator's findings are based on an inaccurate interpretation of the applicable law. This court is not precluded from considering the argument.

*Plaintiffs' Argument*

■ Title I of the Disaster Assistance Act of 1988, codified at 7 U.S.C. § 1421, note, §§ 201–241, directed the Secretary of Agriculture to implement a disaster payment program for eligible producers who suffered losses of production during the 1988 crop year because of drought, hail, excessive moisture or related conditions. Note, §§ 201(a), 202(a). The Act imposed a $100,000 limitation on the disaster payment that any "person" could receive, § 211(a); directed the Secretary to issue regulations specifically defining the term "person" for payment limitation purposes, § 211(d); and limited eligibility for participation in the program to persons whose "qualifying gross revenues" did not exceed $2 million annually, § 231(a). The Secretary was directed to define "qualifying gross revenues," and to consider only a person's qualifying gross revenues from farming if a majority of the person's annual income for the preceding year was received from farming. § 231(b)(1). If less than a majority of the person's income was received from farming, then the Secretary was to consider the person's gross revenues from all sources. § 231(b)(2).

The Secretary's regulations limited eligibility to persons actively engaged in a farming operation and entitled to share in the proceeds of crops that would have been produced but for the disaster, except that "such a person, as defined in [7 C.F.R. Part 795], who has annual gross income in excess of $2 million shall not be eligible to receive disaster payments." 7 C.F.R.

§ 1477.3(g) (1989). In the case of a person who received 50 per cent or less of his or her "gross income" from farming, annual gross income meant the person's total "gross income" from all sources. "Person" was defined to mean an individual, corporation or other legal entity having a separate and distinct interest in a crop or the land on which the crop is produced, a separate responsibility for such interest, and responsibility for payment of the costs of farming related to such interest, separate from any other individual or entity. 7 C.F.R. § 795.3(b)(1) (1989).

Plaintiffs' argument is a technical one that requires several trips through the labyrinth of the Disaster Assistance Act and its implementing regulations. Reduced to its essence, the argument is that in the 1988 Act, Congress directed the Secretary to define the term "person" for payment limitation purposes in one way, but did not direct him to define it in the same way for eligibility purposes, and that the Secretary followed this directive in the regulations he promulgated. According to plaintiffs, it was only for payment limitation purposes that Congress and the Secretary required the county committees to consider the gross revenues of the producer-farmer together with the gross revenues of other entities controlled by the producer. Thus, in determining, for example, whether Chris Hanson had a "qualifying gross income" making him eligible to participate in the program, it would have been proper for the Secretary to have looked at Chris Hanson's 1987 gross income (which should have included all of his income from his wholly-owned corporation as well as income from other sources), but that in 1988 there was no statutory or regulatory basis permitting the Secretary to add the gross revenues of Chris Hanson's wholly-owned corporation to the gross income shown on Hanson's individual tax return for eligibility purposes *and* for payment limitation purposes. In other words, under the 1988 regulations it was proper for defendant to consider Chris Hanson's gross revenues of approximately $90,000, as shown on his 1987 tax return, but at the eligibility determination stage, it was not proper to consider the

gross revenues of his wholly-owned corporations as well.

Plaintiffs point out that § 211(d) of the Act, which is the directive to the Secretary to define "person," makes no reference to eligibility. The section reads in full as follows:

(d) **Regulations.** The Secretary of Agriculture shall issue regulations—

(1) defining the term "person" for the purposes of *this section,* which shall conform to the extent practicable to the regulations defining the term "person" issued under section 1001 of the Food Security Act of 1985 [section 1308 of this title]; and

(2) prescribing such rules as the Secretary determines necessary to ensure a fair and reasonable application of the limitations established under this section.

(Emphasis added.) As plaintiffs note, the "section" referred to is entitled "Payment Limitations." Subsection (a) of the same section refers to the total amount of payments a person shall be entitled to receive "under one or more of the programs established under this subtitle"; subsection (b) prohibits the payment of disaster benefits to persons to the extent such persons have received livestock emergency benefits for lost feed production in 1988; and subsection (c) sets out the combined limitation on livestock emergency benefits and disaster assistance payments. Nothing in the section suggests that Congress authorized the Secretary to define "persons" for the additional purpose of determining eligibility for

participation in the disaster assistance payment program.

Plaintiffs contend that nowhere in the 1988 Act, in its legislative history or in the implementing regulations is there any evidence of an intent to determine participation eligibility by adding the gross revenues of the active farmer (or "producer") to the gross revenues of entities that are to be considered together with the farmer for payment limitation purposes. They acknowledge that the regulations required adding together gross revenues of the individual and gross revenues of controlled entities in determining the size of the payment the partnership could receive.[2] However, they maintain that the regulations did not authorize the Secretary to add the gross revenues of the wholly-owned corporations to their individual gross revenues to make the initial eligibility determination based on "qualifying gross revenue."

Plaintiffs concede that when Congress passed the *1989* Disaster Act, it directed the Secretary to use the same definition of "person" in both the payment limitation and eligibility provisions of the Act, *see* 7 U.S.C. § 1421, note § 109, but they dispute the government's contention that this provision in the 1989 Act was intended merely to make more explicit the "person" congruity between the 1988 payment limitation regulations and the gross revenue provisions of the 1988 Act.[3] The Secretary's regulations implementing the 1988 Act

---

2. For payment limitation purposes, the regulations implementing the 1988 Act were intended to define the term "person" to encompass and combine individuals, partnerships, corporations and other legal entities that constituted a similar unit because of their legal or economic relationship. Although a partnership could not be a "person," 7 C.F.R. § 795.7 (1988), the individual partners of the partnership could qualify as separate persons. Under 7 C.F.R. § 795.-8(a)(3) (1988), a corporation could not be a "person" separate from the individual owner if the individual owned more than 50% of the stock in the corporation. In such cases, the corporation and the individual were combined as one "person" for the purpose of determining the number of allowable maximum payments. Because Chris Hanson owned a 100% share of Douglas–Hanson company, he was combined as

one "person" with the corporation, and Evan Hanson was combined with his wholly owned corporation for the purpose of determining the maximum allowable payments the two "persons" making up the partnership could receive.

Plaintiffs do not challenge either the basis for the payment limit determination or the amount they would have received had they been found eligible.

3. Note § 109 provides that the Secretary shall issue regulations "defining the term 'person' for the purpose of this section *and section 151. . . .*" (Emphasis added.) The reference to section 151 was new. It authorized the Secretary to define the "person" whose annual gross revenue should be determined for eligibility purposes in the same manner as for payment limitation purposes.

show no such congruity. Section 1477.3(g) defines "Eligible Producer" as

> a person who as owner ... is entitled to share in such crops, or the proceeds therefrom ... or would have been if such crop had been produced. However, such a person, as defined in Part 795 of this title, who has annual gross income in excess of $2.0 million shall not be eligible to receive disaster payments.... For purposes of this determination gross income means:
>
> (1) With respect to a person who receives more than 50 percent of such person's gross income from farming ... the annual gross income from such operations; and
>
> (2) with respect to a person who receives 50 percent or less of such person's gross income from farming ... the person's total gross income from all sources.

As noted above at page 407, "person" is defined in 7 C.F.R. 795.3(b) (1989) to mean "an individual ... or other legal entity.... [T]o be considered a separate person ... with respect to any crop ... an individual or other legal entity" must have an interest in and be responsible for all aspects of the farming operation.

At oral argument, the government argued that the Secretary had used the same definition of "person" for defining eligibility and determining payment limitations while administering the 1988 Act, and that the court should give deference to that administrative interpretation by the Secretary. *Cf. Ford Motor Co. v. Milhollin,* 444 U.S. 555, 565, 100 S.Ct. 790, 797, 63 L.Ed.2d 22 (1980) (courts must be attentive "to the views of the administrative entity appointed to apply and enforce a statute"). The argument fails for at least three reasons. First, the record does not support the assertion about the Secretary's practices. The facts proposed by defendant do not enable me to make any finding with respect to the manner in which the Secretary decided any case other than plaintiffs'. I am unwilling to infer from the fact that in the Hansons' case the Secretary's delegates found them ineligible on the basis of the definition of "person" from the payment

limitation provisions of the statutes and regulations that the Secretary proceeded in like manner in all instances. One example out of a universe of unknown size is no basis for finding either that the Secretary's action was routine or that it was an aberration.

Second, even if I could find from the record that in implementing the 1988 Act it was the agency's policy to define "person" in the same way for eligibility and for payment limitation purposes, deference to that interpretation would not be appropriate. Such deference is due only when the agency's interpretation is based on a permissible construction of the applicable statute. *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984). As discussed at length above, the interpretation the Secretary says now that he was applying to disaster assistance applications is not supported by the directives of the Act.

Finally, obvious concerns of procedural fairness arise when the government's practices do not conform with the rules he has promulgated and made known to the public. In plaintiffs' case, they filed applications they believed were in conformity with the Act and the regulations. They had no notice that their applications would be held to be invalid.

The government cites *Vculek v. Yeutter,* 754 F.Supp. 154 (D.N.Dak.1990), *aff'd sub nom. Vculek v. Madigan,* 950 F.2d 727 (8th Cir.1991), in support of its denial of payments to plaintiffs. In that case, however, the court gave only cursory attention to the definition of "person." With respect, I find its resolution of the issue unpersuasive. The only other case the government is an unpublished district court decision. However, it failed to submit a copy of the opinion for whatever guidance it might have provided.

*Reviewability of Denial of Benefits*

As a separate point, it is worth noting that defendant's denial of plaintiffs' application for benefits is so lacking in explanation as to be arbitrary on its face, and unreviewable. Defendant does not disclose

the basis for the finding that each of the Hansons received less than 50 per cent of their income from farming, or that their wholly-owned corporations had more than $2 million in gross sales. According to the February 15, 1990 letter from the director of the St. Croix County Committee, the denial was "based on statements made by Chris Hanson on January 4, 1990 concerning the gross annual income of their outside corporations." What Chris Hanson said is not part of the record, making it impossible to determine whether the denial was legal, even under the incorrect standard of law applied by the defendant and his delegates.

*Availability of Relief*

■ The government makes the puzzling argument that the court is prohibited constitutionally from ordering it to make a payment under the authority of *Office of Personnel Management v. Richmond,* 496 U.S. 414, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990). In *Richmond,* an employee was given erroneous advice by a federal government employee about his eligibility for a disability annuity. He relied on the erroneous advice and became ineligible for the annuity for six months. The Court of Appeals for the Federal Circuit found that the government could be estopped from withholding the annuity payments, but the Supreme Court reversed on the ground that the federal government cannot be estopped from denying payments not otherwise authorized by statute. From *Richmond,* the government argues that the plaintiffs cannot recover their payment in this case because the applicable statute does not permit the making of a payment in the absence of an application approved by the ASCS.

The argument hardly merits discussion. The two cases are entirely different. *Richmond* held that the government can be required to make only those payments authorized by statute. In this case, the statute permits payments to be made to qualifying persons. The plaintiffs are qualifying persons. They complied with all of the procedural requirements for obtaining payment under the Disaster Assistance Act of 1988. But for the defendant's error, they would have been able to keep their payment. The government has asserted only one reason why plaintiffs are not entitled to keep the payments they were given. I have found that reason to be without merit. Plaintiffs' applications would have been approved had the Secretary been following his own regulations. Therefore, plaintiffs are entitled to the payment.

### ORDER

IT IS ORDERED that defendant's motion for summary judgment is DENIED; plaintiffs' cross-motion for summary judgment is GRANTED; and the decision of the defendant Secretary of the United States Department of Agriculture is REVERSED. FURTHER, IT IS ORDERED that no later than April 15, 1992, the defendant Secretary is to remit to Hanson Farms the sum of $51,218 in disaster assistance benefits for 1988.