HAUBEIN FARMS, INC., Plaintiff,

v.

DEPARTMENT OF AGRICULTURE,
Defendant.

Civ. A. No. 92–0482 (HHG).

United States District Court,
District of Columbia.

April 29, 1993.

John J. Mullenholz, Washington, DC, for plaintiff.

John C. Martin, Asst. U.S. Atty., Washington, DC, for defendant.

## MEMORANDUM

HAROLD H. GREENE, District Judge.

This case arises out of Haubein Farm's ("plaintiff") loss of a cucumber crop. In October 1989, Mr. and Mrs. Clovis Haubein, the owners of Haubein Farms, submitted a claim for disaster relief in the amount of $29,041. After reviewing the application, the Dade County (Missouri) Director of the Department of Agriculture, Agriculture Stabilization and Conservation Service ("ASCS"), the Missouri State ASCS and, finally, the Deputy Administrator, State and County Operations, U.S. Department of Agriculture ("Agriculture" or "defendant") rejected the claim on the ground that the Haubein's farm and implement dealership constituted a single "person" with qualifying gross revenues in excess of $2 million. Consequently, pursuant to the Disaster Assistance Act of 1989, 7 U.S.C. § 1421 *note* and the implementing regulations, the Haubeins were ineligible for disaster relief.

Haubein Farms seeks review of the Agriculture's denial of their application for disaster assistance. The Court now resolves the pending cross motions for summary judgment.

I

The facts of this case are undisputed. Mr. and Mrs. Haubein are farmers owning 100 percent of Haubein Farms. During 1988, the year relevant for disaster relief, the gross income of the Haubeins individually and added with that of their farm totalled approximately $700,000. In addition to running the farm, the Haubeins own 100 percent of Haubein Implement Company, a farm implement dealership. Plaintiff concedes that in 1988

the total gross income of the implement company exceeded $1.3 million. Therefore, the 1988 total gross income of the Haubeins individually, their farm, and the implement company exceeded $2 million.

██ The crux of the present dispute is whether the implementing regulations developed by the Department of Agriculture are contrary to Congress' intent in adopting the Disaster Assistance Act of 1989. In making this determination, the Court must view the agency's action through the lens of *Chevron v. NRDC*, 467 U.S. 837, 842–844, 104 S.Ct. 2778, 2781–2783, 81 L.Ed.2d 694 (1984). As stated in *Chevron*, the reviewing court looks first to see whether Congress has "spoken to the precise question at issue." *Id.* at 842, 104 S.Ct. at 2781. If Congress has addressed the issue, the inquiry is at an end, and Congressional intent controls. If the statute is silent or ambiguous, however, the administrative interpretation controls if it is not arbitrary, capricious or manifestly contrary to the statute. *Id.* Below is a description of the regulatory scheme as presently constructed. ·

Under the Disaster Assistance Act of 1989, section 151, 7 U.S.C. § 1421 *note*, certain crop losses may be reimbursed by the federal government. Eligibility for disaster assistance is limited to "persons" who have annual "qualifying gross revenues" of $2 million or less. As required, the Secretary of Agriculture promulgated regulations implementing the Act at 7 C.F.R. Part 1477 (1990).

As defined in section 1497.9(b), a "person" may encompass more than just the Haubeins and their farm. In fact, a corporation may be considered the same "person" as an individual if that individual owns more than 50 percent of the corporation. *Id.* It is undisputed that the Haubeins own 100 percent of the Haubein Implement Company. Therefore, in determining whether to award disaster assistance, the Department of Agriculture considered the Haubeins, their farm, and their farm implement company to be one "person."

Having determined the identity of a "person" for purposes of eligibility, the next issue is whether the "person" has "qualifying gross revenues" of over two million. If so, that

person is ineligible for disaster relief. 7 C.F.R. § 1477.4. There are two methods of computing "qualifying gross revenues." First, "if a majority of the person's annual income is received from farming," qualifying gross revenues are "the gross revenues from the person's farming ... operations." 7 U.S.C. § 1421 *note*. Alternatively, "if less than a majority of the person's annual income is received from farming" qualifying gross revenues equals "the person's gross revenues from all sources." *Id.*

The regulation promulgated by the Department of Agriculture is structured similarly. If a "person receives more than 50 percent of her gross income from farming", qualified gross revenue equals "the annual gross income" solely from the farming operation. 7 C.F.R. § 1477.3(i). However, if the "person receives 50 percent or less of her gross income from farming," qualified gross revenue includes "the person's total gross income from all sources." *Id.*

In applying this regulation, Agriculture first calculated whether less than 50 percent of the Haubein's gross income was derived from farming. Because $700,000 came from farming and at least $1.3 million was earned by the farm implement business, Agriculture determined that the Haubein's qualifying gross revenues must be calculated by adding together their gross income from all sources. Combined, the gross income from the farm and the farm implement company exceeded $2 million. Accordingly, their claim was denied.

## II

██ The Haubeins make two challenges to Agriculture's calculation. First, they contend that Agriculture erred in including the farm implement dealership within the definition of "person" for disaster relief eligibility. If the implement dealership is not a "person", the gross revenue of Mr. and Mrs. Haubein does not exceed the $2 million limit.

The essence of the Haubein's argument is that a corporation must be actively involved in farming to be considered a "person." Because the farm implement corporation was not actively involved in farming, it is not a

"person" for purposes of the Act. In support of this position, plaintiff cites a law review article, Christopher R. Kelley & Alan R. Malasky, *Federal Farm Program Payment Limitations Law: A Lawyer's Guide,* 17 Wm. Mitchell L.Rev. 199, 203 (1991), and points to Congress' requirement that a "person" be actively engaged in farming for purposes of determining payment limitations.

The Court is not persuaded. It is correct that Congress linked "persons" with an "actively engaged in farming" requirement to curb abuses in payment limitations. Because there is a ceiling on the amount of payment each person can receive, farmers were reorganizing their farming operation to create more "persons." Congress put an end to this proliferation of "persons" by requiring that each "person" be "actively involved in farming." However, this case deals not with payment limitations but with payment eligibility. Plaintiff presents no evidence that Congress intended the "actively engaged in farming" requirement to apply also to the eligibility requirements.

Second, the Haubeins argue that eligibility should be determined on the basis of net profits, rather than on the basis of gross revenues. Under the "majority of income" test for determining "qualifying gross revenues" and the eligibility determination which follows, if a majority of the Haubein's income comes from farming, then only revenue from the farm is included in the calculation of "qualifying gross revenues." If the court were to calculate the Haubein's income based upon net profit and not upon gross income, then a majority of their income would derive from farming and, therefore, the revenue from their farm implement dealership would not be considered in ascertaining whether they have qualifying gross revenues in excess of $2 million.

Again, plaintiff offers only weak support for its position. Plaintiff points out that the statute provides that the calculation of "qualifying gross revenues" turns on a person's "annual income." In contrast, the regulation states that the determination of "qualifying gross revenues" is based upon a person's "gross income." Plaintiff submits that by "annual income" Congress meant "net profit"

and that Agriculture's use of the term "gross income" runs counter to clearly expressed Congressional intent.

The problem here is that the plaintiff provides no support, either from the Act itself or the legislative history, to prove that Congress wanted this calculation to be based upon net profits. Indeed, the Act itself delegates to the Secretary the discretion to determine how to calculate "qualifying gross income." In pertinent part, the Act provides:

> (a) *General Rule.* A person who has qualifying gross revenues in excess of $2,000,-000 annually, as determined by the Secretary of Agriculture, shall not be eligible to receive any disaster payment....

7 U.S.C. § 1421 *note.*

Combined, the absence of evidence of Congressional intent indicating that "gross revenue" was to be synonymous with "net profit" and the specific grant of discretion to the Secretary, convince this Court that Agriculture's determination that "gross revenue" was synonymous with "gross income" cannot be found to be arbitrary and capricious. *See Vculek v. Yeutter,* 754 F.Supp. 154, 156–157 (D.N.D.1990).

Although plaintiff advances two alternative routes that Agriculture could have followed in promulgating the regulations, it offers nothing to demonstrate that this is consistent with Congressional intent. Nor are the regulations an unreasonable interpretation of the statute. Accordingly, because plaintiff concedes that if the defendant correctly interprets the statute, it is not eligible for disaster relief, plaintiff's motion for summary judgment is denied and judgment will be entered for defendant.