**UNITED STATES of America**

v.

**Russell Eugene WESTON, Jr., Defendant.**

**Criminal Action No. 98–357(EGS).**

United States District Court, District of Columbia.

June 18, 1999.

Ronald Walutes, Erik Christian, David Goodhand, Assistant United States Attorneys, Washington, DC, for plaintiff.

A.J. Kramer, Federal Public Defender, L. Barrett Boss, Assistant Federal Public Defender, Washington, DC, for defendant.

*MEMORANDUM OPINION & ORDER*

SULLIVAN, District Judge.

### INTRODUCTION

This matter is before the Court for review of the decision by the Bureau of Prisons ("BOP") to forcibly administer antipsychotic drugs to the defendant, a pretrial detainee presently committed to a federal facility to restore his competency to stand trial.

### BACKGROUND

On April 22, 1999, the Court committed the defendant to the custody of the United States Attorney General pursuant to 18 U.S.C. § 4241(d), and the defendant was admitted to the Health Services Division of the Federal Correctional Institution in Butner, North Carolina on May 5, 1999. As part of the Court's April 22 Order, and at the defendant's request, the Court stayed any action by the BOP to medicate the defendant without his consent and ordered that defense counsel receive reasonable notice prior to the commencement of an administrative hearing:

> [S]hould qualified medical personnel within the Bureau of Prisons, in the course of defendant's treatment, decide that the administration of psychotropic medications is appropriate, and should it appear that defendant will not provide voluntary written informed consent to

the administration of such medication, then the Bureau of Prisons may follow the administrative procedures under 28 C.F.R. § 543, provided that counsel for Mr. Weston receive reasonable notice before a hearing commences under § 543. The Court and counsel for the parties shall be immediately notified of all determinations made within the administrative process and shall be provided copies of the written report required under § 543(a)(5), and also shall be provided copies of any decision by the institution's mental health division administrator should an administrative appeal be taken. *No administration of psychotropic medications to defendant against his will shall occur without the prior approval of this Court in a written Order.*

April 22, 1999 Order, at 6 (emphasis added).

In compliance with the Court's Order, Dr. Sally Johnson, Associate Warden Health Services, FCI–Butner, informed the Court on May 20, 1999, that the defendant refused to take antipsychotic medication voluntarily and requested that the Court issue a written order to treat the defendant.[1] Pursuant to 28 C.F.R. § 549.43,[2] the Butner facility held an involuntary medication hearing on May 14, 1999. On May 13, the day before the

---

1. Dr. Johnson attached the following documentation to her letter: 1) Appeal of Involuntary Medication Hearing Decision; 2) Appeal of Involuntary Medication Hearing Decision—Response of warden; 3) Notice of Medication Hearing Rights and Advisement of Rights; 4) Duties of Staff Representative; and 5) Involuntary Medication Report.

2. BOP regulations provide that an inmate who refuses to consent to the administration of medications is given an administrative hearing with the following protections: at least 24 hours written notice of the date, time, place, purpose of the hearing and the reasons for the proposed medication; notice of the right to appear at the hearing, to present evidence, to have a staff representative, to request witnesses, and to request that witnesses be questioned by the staff representative or by the person conducting the hearing;

a copy of the report generated by the hearing; and notice of the right to appeal the decision and to assistance in appealing the decision. *See* 28 C.F.R. 549.43(a)(1)-(6). A psychiatrist who is not currently involved in the diagnosis or treatment of the inmate conducts the hearing. *Id.* The hearing officer considers evidence presented by the evaluating psychiatrist and the inmate and determines "whether treatment . . . is necessary in order to attempt to make the inmate competent for trial or is necessary because the inmate is dangerous to self or others, is gravely disabled, or is unable to function in the open population of a mental health referral center or a regular prison." 28 C.F.R. § 549.43(5). If the inmate appeals an adverse decision, the administrative process is complete when the Warden decides the inmate's appeal. 28 C.F.R. § 549.43(7).

hearing, the defendant declined to select a staff representative, so Dr. Herbel, the Staff Psychiatrist appointed to be hearing examiner, appointed Mr. Ray Pitcairn, the Day Watch Nursing Supervisor, to be the defendant's Staff Representative.[3] Dr. Herbel indicated in his report of the hearing that the defendant refused to present any evidence or to respond to Dr. Johnson's testimony and that he refused to speak other than stating that "Upon the advice of my attorney, I cannot make any comments or statement or sign any documents." Hr'g Tr., at 40 (5/28/99).

The report further indicates that the defendant refused to speak with Mr. Pitcairn "due to the advice of his attorney." Based on the evidence presented to him at the hearing, which consisted solely of Dr. Johnson's reasons for wanting to medicate him, Dr. Herbel concluded that the defendant suffers from a mental disorder and that he needs to be medicated. *See* Dr. Johnson Ltr. (5/20/99), Involuntary Medication Report attachment, at 8. The defendant appealed the hearing examiner's decision, and the warden denied the appeal on May 18, 1999.

Following the receipt of Dr. Johnson's May 20, 1999 letter, the Court held a conference with the attorneys on May 24, 1999, and then decided to hold a hearing to supplement the sparse administrative record.[4] *See Esch v. Yeutter,* 876 F.2d 976, 991–93 (D.C.Cir.1989) (discussing circumstances that justify going outside the administrative record). At the hearing on May 28, 1999, Mr. Pitcairn testified by

---

3. The federal prison at Butner requires potential staff representatives to sign a memo entitled "Duties of a Staff Representative" indicating that the person agrees to serve as a Staff Representative. This memo states that in general, the role of the staff representative is "to help the patient present the best alternative possible to the proposed involuntary medication" by doing the following:

1. You are to assist the patient in presenting whatever information the patient wants to present and in preparing a proposed alternative, if any. This will require in every case, consultations with the patient and familiarity with Operations memorandum 6010.01 dated 09/21/95.
2. You are to speak to witnesses who might furnish evidence on behalf of the patient, if the patient indicates that there are such witnesses whom the patient wishes to be called. You may question the witness.
3. You should become familiar with reports relative to the proposed medication. Confidentiality or security information must of course be protected and may not be shared with any other person, including the patient, staff, visitors, attorneys, etc. Any request for confidential information must be directed to the AWHS [Associate Warden of Health Service].
4. You should present any evidence favorable to the patient's position.
5. You should present information which may assist the Administrative Hearing Officer and which may obtain a resolution sought by the patient. If you believe you need additional time to pursue any of these functions, you may request a delay in the hearing, but ordi-

narily only after you have the concurrence of the patient to do this.
6. You are to help the patient understand the reasons for the proposed medications and the procedures involved.
7. You should be familiar with procedures at the hearing, explain them to the patient in advance, and if necessary, during the hearing, assist the patient in understanding procedural points.
8. If the patient asks you to assist in writing an Appeal from the decision rendered at the hearing, you should assist the patient in doing so. In any event, you should carefully determine the patient's desire to appeal and carefully document his desires.
59–91(6000) Duties of Staff Representative, Involuntary Medication Hearing.

In addition, the BOP has elaborated on these regulations: with

The staff representative should be impartial and able to act in the best interests of the inmate. He/she shall meet with the inmate to help prepare for the hearing and must assist at the hearing in presenting the inmate's position. The staff representative shall also help the inmate prepare and submit and appeal if he/she requests assistance or wishes to appeal but is unable to prepare and submit the appeal.

PS 6010.01 Psychiatric Treatment/Medication, Admin. Safeguards.

4. The defendant was not present for that conference pursuant to Fed.R.Crim.P. 43(c)(3), which states that a defendant need not be present "when the proceeding involves only a conference or hearing upon a question of law."

telephone that the defendant refused to speak with him prior to the hearing. As a result, Mr. Pitcairn explained that "there was nothing [he] could say for [defendant] except for the fact [he] attempted to explain to [defendant] the procedures as [he] understood them." *Id.* at 123. Mr. Pitcairn further added that the defendant did not state that he did not want to take medication until the time of the hearing. *Id.* at 126–127. Mr. Pitcairn admitted that he presented no favorable evidence against forced medication and made no attempt to determine whether such evidence existed. *Id.* at 127. The Court finds it most significant that Mr. Pitcairn has served as a staff representative approximately once a month during his 22–month employment at Butner, *id.*, and that his experience with the defendant marked the *first* time that an inmate had refused to speak with him. *Id.*

### DISCUSSION

As an initial matter, the Court finds that the Bureau of Prisons failed to comply with this Court's April 22 Order, which required that Butner provide defense counsel with reasonable notice of the involuntary medication hearing. Dr. Johnson testified that she informed defense counsel, during his visit to Butner on May 10, 1999, that she "would proceed with the involuntary medication review process within the week." Hr'g Tr., at 36 (5/28/99). Contrary to the Court's Order, Butner provided defense counsel with absolutely no notice of the hearing date. Thus, defense counsel was unable to contact the Staff Representative. This failure troubles the Court, especially given the Bureau of Prisons' failure to notify defense counsel of an involuntary medication hearing in a recent similar case. *See United States v. Morgan*, Criminal No. 4:98–00428 (D.S.C. Feb. 9, 1999 Order, at 2 n. 1)("The court also notes that BOP failed to notify Defendant's counsel of the hearing, as was previously ordered by the court.").

In addition to its concern over the lack of notice to defense counsel, the Court also finds that the record in this case reveals that the hearing officer did not have before him "any evidence favorable to the patient's position." *See* 59–91(6000) Duties of Staff Representative, Involuntary Medication Hearing. Indeed, defendant's staff representative, Mr. Pitcairn, testified that he said nothing at the hearing other than that the defendant had refused to talk to him. The record does not indicate that Mr. Pitcairn reviewed the defendant's files to locate evidence favorable to the defendant. Furthermore, the Court is uncertain if Mr. Pitcairn "[spoke] to witnesses who might [have] furnish[ed] evidence on behalf of the patient." *Id.* Although the memo indicates that the Staff Representative is required to speak to such witnesses only "if the patient indicates there are such witnesses whom the patient wishes to be called," Mr. Pitcairn was certainly aware, or should have been aware, that the defendant was represented by counsel and could have contacted defendant's attorneys, or vice versa.

At the May 28 hearing, the defendant proffered his position that "the medication is not justified [and] not needed," Hr'g Tr., at 4 (5/28/99) and also stated that his expert would have testified that "to a reasonable degree of medical certainty, [the defendant] would not be made competent, that his delusions were too ingrained, and in addition there would have been some testimony about some of the side effects that Dr. Johnson... minimized." Hr'g Tr., at 129 (5/28/99). Although Dr. Johnson testified that she believes the defendant has a 70–75% likelihood of becoming competent through the treatment she has proposed, the record does not indicate that the hearing examiner considered any evidence at all regarding the treatment's likelihood of success.

Because the Staff Representative failed to present any evidence or witnesses in support of the defendant's position and indeed failed to conduct any search for

witnesses or such evidence, the hearing examiner made his decision based exclusively on Dr. Johnson's testimony and evidence. Therefore, the Court will remand this decision to the agency for further proceedings consistent with this opinion. *See Esch v. Yeutter,* 876 F.2d at 993 (holding that remand to agency was appropriate upon finding of procedural defectiveness).

### CONCLUSION

Accordingly, it is hereby

**ORDERED** that the decision of the warden is remanded to FCI–Butner for further proceedings consistent with this opinion; and it is

**FURTHER ORDERED** that the stay prohibiting the administration of antipsychotic medication to the defendant against his will shall remain until further Order of this Court; and it is

**FURTHER ORDERED** that should involuntary medication hearings take place, a transcript of such hearings shall be provided to the Court; and it is

**FURTHER ORDERED** that upon completion of proceedings at FCI–Butner, the Court will schedule further proceedings in this case as appropriate.

**IT IS SO ORDERED.**